## WILLIAM L. COYNE
### v.
## PHILLIP DOOLEY.

*Negotiable Instruments—Note—Fraudulently Raised—Suit by Assignee —Negligence of Maker—Illiterate Person.*

Where a note, which had been fraudulently raised, is purchased for value before maturity, and the maker was unable to read or write, which was known to the assignee, but signed by a mark, in an action by the assignee the jury were correctly instructed that no negligence was to be imputed to the maker because there were unfilled blanks in the note at the time of signing, it having been shown that the maker required the note to be read over to him by his son before signing.

[Opinion filed December 16, 1889.]

APPEAL from the County Court of Mercer County; the Hon. J. H. CONNELL, Judge, presiding.

Messrs. BASSETT & BASSETT, for appellant.

Coyne v. Dooley.

The general principle is well settled that when the drawer of a bill or maker of a note is negligent in the execution of the instrument, and leaves room for any alteration to be made either by insertion or erasure, without defacing it or exciting the suspicion of a careful man, he will be liable upon it to any future holder and assignee who bought the same before it was due and without notice, when the opportunity which he has afforded has been embraced and the instrument filled up with a larger amount or different terms than those it bore at the time he signed it.    Daniel on Negotiable Instruments, Vol. 2, page 377, Sections 1405 and 1406; Elliott v. Levings, 54 Ill. 213; Harvey v. Smith, 63 Ill. 224; Yokum v. Smith, 63 Ill. 321; Siebel v. Vaughan, 69 Ill. 257; Holmes v. Hale, 71 Ill. 552.

It is the duty of a person signing a promissory note to use reasonable and ordinary precaution to avoid imposition, and if he does not, an innocent person should not suffer loss for his want of care.    Anderson v. Warner, 71 Ill. 20; Zimmerman v. Roth, 75 Penn. State, 188; Blakely v. Johnson, 13 Bush. 204.

In Simms v. Rice, 69 Ill. 90, the court said: "Appellants were dealing with a stranger, and if they knew he was an agent selling such machinery, it was enough to arouse their suspicions."    But this and all other decisions in that line were overruled in Comstock v. Hannah, 76 Ill. 530; see Shreeves v. Allen, 79 Ill. 553; Smith v. Culton, 5 Ill. App. 422; Sherwood v. Morrison, 17 Ill. App. 591; Goodman v. Seward, 20 How. 343; Murray v. Lardner, 2 Wall. 120; Welch v. Sage, 47 N. Y. 143; Seybel v. National Currency Bank, 54 N. Y. 288; Chapman v. Rose, 56 N. Y. 137.

Messrs. PEPPER & SCOTT, for appellee.

UPTON, P. J.    This was assumpsit by the assignee against the maker of a promissory note, commenced in the County Court of Mercer County.    Appellee, defendant below, pleaded the "general issue" and "*non est factum*" sworn to.    The cause was submitted to the court on issues joined, the finding

and judgment for defendant. The cause is here on appeal. The errors assigned are that the court erred in its findings on propositions of law submitted, and that the evidence does not support the judgment, as well as in refusing a new trial.

The evidence shows that the note was given for lightning rods put upon the barn of appellee. The payee of the note, one G. W. Warner, made a contract to put up the rods for $35 and after they were put up, the note was drawn by the payee and by him read to the appellee, and also read by the son of appellee to him; both read the note as it was then written, for the sum of $36.12, dated July, 1879, due on the first day of August, 1880, with interest at seven per cent. Appellee is an unlettered man and could neither read nor write, and he authorized his young son to write his name as witness, and to write appellee's name thereto as maker thereof, which he did, and appellee made his mark "X" to the note. This note was upon a printed blank filled up, about six inches in length, with the dollar mark in the top left hand corner, with lined spaces of about one inch long, and a blank space in the body of the note for inserting the amount in writing over a dotted line, at the end of which was the word "dollars" at the right hand side of the note, which dotted space is nearly four inches in length. The note as originally drawn, as the evidence shows, was for the sum of $36.12, and was written near the right hand margin of the blank, leaving a distance of some two inches of the dotted space at the left hand margin of the note, in which was afterward inserted, with apparently the same pen and ink, the words " one hundred and" in the same. handwriting as the body of the note, and the figure " 1" inserted before the " 36.12" in the space in the top left hand corner of the note, so that the note was "raised" one hundred dollars.

Appellant resided in Rock Island, some thirteen miles from the residence of appellee; he was personally acquainted with appellee, and knew him to be pecuniarily responsible. The payee of the note, Warner, told appellant that the note was given for a lightning rod, before he purchased it; that the bank sent him to appellant, and appellant knew the business

Coyne v. Dooley.

in which appellee was engaged. Under these circumstances appellant purchased the note of Warner some two months before due, and it was duly assigned to him, and he is the holder thereof for value.

The real question involved in the case is whether there was negligence in the maker of the note in the drafting and execution thereof and putting it into circulation in the manner above described, so that it could be filled up, and deceive a "*bona fide*" purchaser, or holder for value.

It was conceded by both parties (as of course) that any material alteration in the terms of a promissory note, made without the knowledge and consent of the maker after its delivery, renders it void in the hands of payee or assignee.

The court below held that if the note offered in evidence was changed or altered by inserting in the body of the note the words "one hundred and" and the figure "1" without appellee's consent, and after the execution and delivery of the note, then appellant, as assignee, could not recover unless it appeared from the evidence that the defendant left blanks in the note that might be filled up, and was, under the circumstances, chargeable with negligence in so doing; that a man who can neither read nor write and who signs a note by his mark is *not* chargeable with negligence, if there should be in such note a blank which is afterward filled up, "raising" the amount of the note; that one who takes a note as assignee or purchaser signed by a mark only, and knows that the maker can not read or write, is presumed to take it with knowledge that negligence is not to be imputed to the maker under such circumstances, even though there were unfilled blanks in the notes at the time of signing the same. Upon full consideration of this contention, we are inclined to hold with the trial court. The question whether a party has been negligent in a particular case, is one of mingled law and fact. The extent of the defendant's duty in any particular case is to be determined by a consideration of his circumstances so far as known. The law imposes duties upon men according to the circumstances under which they are called to act, and hence it would seem to follow that an assignee, taking commercial paper,

which is executed as was the note in the case at bar, and the party so executing it was so wanting in knowledge and business capacity as to be unable to read or write, and that fact was known to such assignee, "no negligence can be imputed to the maker under such circumstances, even though there were unfilled blanks in the note at the time of signing," as held by the trial court.

In the case at bar appellee gave his note as it was read to him, and for the amount agreed upon. As to that amount he did not rely upon the statement of the payee, but caused the note to be read by his son, and all agreed that the note was then correctly written and read to him. That was *the most he could do*. He could not, by personal examination or inspection, have done more, for neither would have been of aid to him in determining his duty or obligation in the premises. We understand that the courts in our own State, as elsewhere, make a distinction upon the question of diligence (and the amount and character of the diligence) required of the maker of a promissory note, between a person who can *read* and *write*, and one who *can not*.

In Wheeler & Wilson Man. Co. v. Long, 8 Ill. App. 463, the court say: "When a person is not illiterate, blind, or unacquainted with our language, etc; * * * even an illiterate person will be bound if he execute without requiring the instrument to be read;" citing Thoroughgood's case, 2 Coke, 9, and Strong v. Linnington, 8 Ill. App. 436, in which last case the court say: "We do not regard it either law or common sense that a man who *can read*, and fails to read an instrument which he signs, must, under all circumstances, have negligence imputed, which would deprive him of the defense here set up (fraud in executing the instrument); for fraud assumes such a variety of forms as to set all systematic classification of its victims at utter defiance." So that this defense is not limited necessarily to the illiterate, the blind, or those unacquainted with our language. *Each case depends upon its own circumstances.* The law is comprehensively stated by Justice Boyles in Foster v. McKinnow, 38 L. J. R. N. S. 310.

Coyne v. Dooley.

In Leach v. Nichols, 55 Ill. 276, it is said: " It seems plain on principle and upon authority that if a blind man, *or any man who can not read,* or a man who for some reason (not implying negligence) forbears to read   *   *   *   is thrown off his guard by reason of the relation of the parties, and the conduct of the payee   *   *   *   negligence would not be imputable."

In Taylor v. Atchinson, 54 Ill. 196, which was a suit by the assignee of a note assigned before maturity, and fraud in obtaining the execution was set up in defense, it was said by the court, " if the party executing a note is able *to read readily* he should examine the instrument or procure it to be read by some one in whom he can place confidence," etc.; *if he does not,* he may be chargeable with negligence.   The con· verse of that proposition is the case at bar.

The court further say in the case last referred to: " While this may not be the precaution which would have been observed by an unusually cautious man, still we think he acted as the· great mass of men not in or educated to business, act in such cases, and he was only required to use reasonable caution, such as governs the majority of prudent men, in the transaction, to escape the imputation of negligence."

So in the case at bar it may be said without the hazard of successful contradiction, that the appellee was only required to use reasonable caution, such as governs the majority of prudent men in the transaction of business of like character, such as they would make use of, and that he did so act, we · think the evidence in this record fully shows; and we think that no imputation of negligence could be charged against him under the circumstances in the evidence in this case.

Finding no substantial error in this record, the judgment is affirmed.

*Judgment affirmed.*